## ABNER C. HARDING

*v.*

## THE TOWN OF HALE.

1. PUBLIC HIGHWAY—*obstruction of.* Where the county commissioners lay out and establish a public highway of a prescribed width, it will be confined to that width, unless increased by dedication or otherwise. The

mere fact that it was graded, and was traveled a greater width, but outside of the road no particular strip was so used, does not change the boundary of the road.

2. Under the act of 1849, the owner of land adjoining a highway may plant a live fence on the precise line of the road, and may erect a protection fence not more than six feet in the road from the live fence, and may maintain it for the period of five years, without being liable to prosecution for obstructing the highway.

3. BILL IN EQUITY—*estoppel.* Where a party files a bill in equity to restrain the removal of such protection fence, and, by mistake, alleges in his bill that the road was established four rods wide, and afterwards, by leave of court, amends his bill, and charges that the road was, in fact, established but fifty feet in width, the first allegation does not estop him from showing he was prosecuted for obstructing the road that was but fifty feet in width.

4. HIGHWAY—*act of* 1849. In such a case, it is error to instruct the jury that, if the defendant built a fence in any part of a highway that had been used for more than twenty years before the fence was erected, they should find the defendant guilty of obstructing the road. Such an instruction excludes a defendant from all benefit of the statute of 1849, and should be modified or refused.

5. SAME—*dedication.* It is error for the court to instruct the jury that, while the voluntary use with the assent of the owner of the soil may not be enough to create a highway, but when used, traveled by the public, and recognized and repaired by the public authorities, and acquiesced in by the owner, it becomes a public highway by dedication. In such a case, the question of an intention to dedicate by the owner is essential to the dedication in addition to the other acts specified in the instruction. That question should be fairly left to the jury, but is taken from them by such an instruction.

APPEAL from the Circuit Court of Warren county; the Hon. ARTHUR A. SMITH, Judge, presiding.

Messrs. HARDING & McCoy, for the appellant.

Mr. JOHN J. GLENN and Mr. JOHN PORTER, for the appellee.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

This action was commenced in a justice's court, by the town of Hale against Harding, to recover a penalty under the statute

194          HARDING v. TOWN OF HALE.          [Sept. T.,

Opinion of the Court.

for an alleged encroachment by the defendant upon a pub-
lic highway.     Stat. 1861, p. 264.   In that court judgment
was given for the defendant, from which the plaintiff took an
appeal to the Warren county circuit court, wherein the cause
was tried before a jury, who returned a verdict against defend-
ant of guilty.   A motion for new trial was made, overruled
by the court and judgment rendered upon the verdict.   ·  ·

The evidence and rulings of the court were preserved by
bill of exceptions, and the case brought to this court by ap-
peal.    The errors assigned question the propriety of the ruling
of the court in refusing to grant the motion for a new trial,
and in giving instructions on behalf of plaintiff and refusing
those on behalf of defendant.

The bill of exceptions purports to contain all the evidence.
The road in question was known as the Monmouth and
Oquawka road, running east and west through sections 27, 28,
etc., Hale township, Warren county.

The plaintiff gave in evidence, without objection, the rec-
ord of proceedings in the county commissioners' court of that
county, at the October term, 1838, purporting to lay out a
highway from Monmouth to Oquawka, fifty feet wide, and on
the middle line through certain sections, including said section
27.    And also introduced in evidence, without objection, the
record of proceedings in the same court at the June term,
1847, from which it appears that an order was made that the
survey of Joseph Paddocks, county surveyor, of the road com-
mencing on sec. 26, 11 north, 3 west, thence west to Hender-
son county line, *for the purpose of grading said road,* be filed,
and that the expense of such survey be paid out of the county
treasury.   The survey was filed on the 10th of June, 1847,
and reads as follows:   "Survey of the road from Monmouth
to Oquawka, commencing at the quarter section corner be-
tween sections 26 and 27, then north 83 deg. 30 min. west to
the Henderson county line at the quarter section corner of
section 30, town 11 north, 3 west, and of the lots that were

sold out to be graded, and the names of the undertakers annexed to said lots, as per plat hereto annexed will show, the dotted line representing the road." This dotted line begins near the east line of section 27, and runs west through the middle of sections 27, 28, 29 and 30.

The only other proceedings relate to the letting of the contracts for doing the grading, and acceptance of the work.

These proceedings in 1847 purport to be neither for the purpose of laying out a new road, nor the widening of one already laid out, but are merely for the purpose of grading one already laid out, which was fifty feet in width. There was evidence, however, tending to show that, in making the grade of the road, under the order of 1847, through section 27, "they broke from out to out sixty feet," and that the road laid out was in fact sixty feet wide.

There was no dispute as to the north line of the highway, through section 27. That line seems to have been established and marked by a fence which had existed for twenty years and upwards. But there appears to have been no fence on the south line during any considerable part of that time; if there was, the record fails to show it.

It appears that the ground through 27, where the road was laid out, was rather low and wet, and that the work of grading was insufficiently done to make a good road; that, as was natural to suppose, in the wet seasons of the year, the travel encroached upon the lands on the south side. But there is no evidence to show, nor is it pretended by counsel for appellee, that such travel, outside of the regularly laid out road, was confined to any particular strip of a given width; nor are there any circumstances in proof from which the jury could infer any intention on the part of the owner to dedicate any particular additional strip of land on the south side of the highway regularly laid out, so as to make it a lawful highway of any greater width than the fifty feet as prescribed by the county commissioners' court, or at most, than the sixty feet— the width at which it was worked.

The defendant, being the owner of the southeast quarter of section 27, the north boundary of which was upon the south line of this highway, and wishing to plant a hedge or live fence upon the south line of such highway, prepared his ground for that purpose, and, in the spring of 1869, built a fence for the protection of the hedge along the margin of the highway. That fence is the alleged encroachment.

By an act of the legislature, approved February 12th, 1849, it is enacted, " That whenever any owner or owners, occupant or occupants, of any land or lands bordering upon a public road or highway, except a street or alley in a town or village through which any public road or highway may pass, may wish to plant any live fence along the margin of his, her or their lands, it shall be lawful for any such person or persons to set or plant any such hedge or live fences precisely on the line of the public road or highway, and also to set or plant on the margin of said road a protection fence, not to occupy more than six feet of the margin of said road, and such protection fence, when planted opposite any fence or hedge, *actually set or planted, shall be permitted by supervisors and all other persons to remain for the term of five years,"* etc.   Stat. 1849, p. 84.

The plaintiff introduced in evidence, on the trial of the cause, an original and amended bill in chancery, filed by defendant, as complainant therein, in the Warren circuit court, in May, 1869, to restrain the officers of the town of Hale from interfering with said protection fence, which bills were sworn to by defendant, and upon which an injunction was allowed. In the original bill it is alleged that the highway in question was originally laid out four rods wide; but having obtained leave to amend his bill, he stated in such amendment that it was erroneously alleged in the original bill that the road was originally laid out of the width of four rods, and that it was in fact laid out but fifty feet wide.

The counsel for appellee seem to rely upon the allegation of the original bill, that the road was laid out of the width of four rods, as an estoppel upon defendant.

" Whether the statements in the *bill* are to be taken conclusively against the complainant, as admissions by him, has been doubted; but the prevailing opinion is supposed to be against their conclusiveness, on the ground that the facts therein stated. are frequently the mere suggestions of counsel, made for the purpose of obtaining an answer under oath. If the bill has been sworn to, without doubt the party would be held bound by its statements, *so far as they are direct allegations of fact.*" 1 Greenlf. Ev. sec. 551, and the cases cited in note 2.

The allegation of the original bill is, "that a public road of the width of four rods, leading west from Monmouth, in said county, and commonly known as the Oquawka road, was laid out by the proper authorities of said county many years ago."

The allegation of the amended bill is, "that the public road known as the Monmouth and Oquawka road, mentioned in your orator's said bill, was originally laid out of the width of fifty feet, instead of four rods, as erroneously stated in said original bill, as shown by the record of the laying out of said road, a copy of which is hereto annexed," etc.

The position of counsel, that the defendant was estopped by his allegation in the original bill from denying that this highway was laid out four rods wide, is susceptible of two answers: 1st. The allegation, as it originally stood, was not of itself a direct allegation of a fact, but a reference to a legal proceeding and its results. It partakes of the nature of a description. Yet there was such a clear mistake or variance, that the records of the county commissioners' court would not be admissible to sustain it. It would be an extraordinary doctrine that, if a complainant in chancery refers to a legal proceeding in his bill, and gives a mistaken description of it, he is forever bound by such mistaken description, although he amends his allegation in conformity with the truth, under leave of the court. 2d. When the amendment was made under the order of the court, there ceased to be any such allegation, that the road was laid out four rods wide. That

198      HARDING *v.* TOWN OF HALE.      [Sept. T.,

Opinion of the Court.

allegation became altered into another, in conformity with the truth. Amendments to a bill are always considered as forming a part of the original bill. Although it is the practice to call a bill thus altered an amended bill, the amendment is in fact esteemed but as a continuation of the original bill, and as forming a part of it, for both original and amended bills constitute but one record. 1 Dan. Ch. Pr. 455.

But the plaintiff having introduced the bill in evidence, the defendant was entitled to the benefit of all its allegations of fact making in his favor. It distinctly alleges, "that the said fence was and is of a temporary character, intended merely for the protection of a hedge which complainant began to grow and attempted to raise on his land and near the line of said road, on the south side thereof, which said hedge is located about six feet inside of said fence."

There was no attempt, on the part of plaintiff below, to controvert the truth of this allegation, or the testimony given by the defendant on the trial, that the fence was made as a protection to his hedge.

Such being the state of the case, the court, on behalf of the plaintiff, gave to the jury the following instruction:

"The jury are instructed, on the part of the plaintiff, that, if they believe, from the evidence in this case, that the defendant, Harding, erected, or caused to be erected or built, a fence in any part of a public highway running on the north side of the southeast quarter of section 27, 11, 3 in Hale township, in Warren county, and that although they may believe, from the evidence in this cause, was not a laid out road according to the statute, where the fence is erected; yet if they believe, from the evidence in this cause, that any part of said fence is in any part of a public highway that has been used, worked and traveled for more than twenty years before the erection of said fence, then they will find the defendant guilty, and assess the damages at," etc.

It was shown, upon the trial, by witnesses who had made an actual measurement, and the fact was not disputed by anybody who had made such measurement, that after defendant had built his fence, the width of the highway between it and the fence on the north line was generally sixty-three feet, though in some places it was only sixty-two. This left the highway at least two feet wider than any witness pretended it was practically laid out under the proceedings of 1847; but even if it be conceded that, by dedication or prescription, a still wider strip was added to it on the south side, of which there is no satisfactory evidence in the record, still, as the case stood upon undisputed facts, the real questions to be submitted to the jury were, whether the defendant had actually planted a hedge upon his land near the south line of the road, and made the fence opposite the hedge for its protection, and whether such fence took in more than six feet of the margin of the road, and they should have been told that, if the hedge was actually planted, and the fence for its protection included more than six feet of the margin of the road, the defendant would be liable, otherwise not.

Instead of this, the instruction given declared an absolute liability, if the defendant erected or caused to be erected or built a fence in any part of the public highway. The effect of this instruction was to exclude all consideration of the grounds of defense, and to deprive the defendant of the protection of the statute of 1849, and it was error to give it.

The second instruction, on behalf of plaintiff, is thus:

"The jury are instructed the voluntary use of a way by the public, with the assent of the owners of the soil, may not of itself be enough to make it a public highway; but when the fact that it is used and traveled by the public is connected with proof of its actual recognition, and repaired by the proper public authorities by the public, and an acquiescence by the owner of the land—that the way is a public highway by dedication. And if the jury believe, from the evidence in this

200          HARDING *v.* TOWN OF HALE.          [Sept. T.,

· Opinion of the Court.

case, that the public authorities of Warren county and Hale township worked and repaired the road where the defendant has his fence, and the repairing, working and traveling of said road by the public was done with the knowledge and assent of the defendant or his grantor or grantors, then the jury should find for the plaintiffs in this case.".

The vital principle of dedication is the intention to dedicate—the *animus dedicandi;* and whenever this is unequivocally manifested, the dedication, so far as the owner of the soil is concerned, has been made. Ang. on Highways, sec. 142.

In *Marcy* v. *Taylor*, 19 Ill. 634, the court said : "A dedication for a highway may be proven in various ways; it may be established by a written grant, by long and uninterrupted user, or by the acts and declarations of the owner of the premises; but to be availing, it must be made with *the intention to dedicate.*" See also *Rees* v. *City of Chicago*, 38 Ill. 322.

By this second instruction, instead of submitting the question of intention to dedicate, to the jury, the court tells them that the facts of user by the public, recognition by the proper authorities and making repairs, "and *an acquiescence* by the owner of the land," of themselves constitute dedication. In the latter branch of the same instruction, the court improperly assumed that the place where the defendant has his fence was a road, and then directed the jury to find for the plaintiff, if they believed, from the evidence, that the public authorities worked and repaired it, and the repairing, working and *traveling of said road*, by the public, was done with the knowledge and assent of the defendant or his grantor or grantors. This instruction goes the length of making any act of working, repairing or traveling on this road, with the knowledge and assent of the defendant, to constitute a cause of action against him; and it goes still further, and declares that, if the act of repairing, working and traveling on the road was done with the knowledge and assent of defendant's grantor or grantors,

without reference as to whether it was before or after their grant to him, still he shall be made liable. Such is not the law.

The instruction was manifestly erroneous, and the judgment must be reversed and the cause remanded.

*Judgment reversed.*