## Chicago Athletic Association v. Eddy Electric Mfg. Co., for use, etc.

1. INSTRUCTIONS—*Must Give all the Conditions for a Recovery.*—An instruction which purports to tell the jury under what conditions a recovery may be had, must give all of the conditions essential to right of recovery.

2. SAME—*Permitting the Jury to Regard What is a Substantial Compliance with a Contract.*—An instruction which permits the jury to regard a substantial compliance with the provisions of a contract and specifications as equivalent to a complete performance, and to award a recovery thereon, without limitation as to amount, is erroneous.

3. ARCHITECT'S CERTIFICATES—*When a Condition Precedent.*—In the absence of fraud or refusal to act on the part of the architect, or of a waiver by the parties, the certificate of the architect is to be held as a condition precedent to recovery of the contract price when the terms of the contract so stipulate.

4. SAME—*Where He is a Member of the Board of the Contracting Party.*—The mere fact that the architect was, at the time of making a building contract, a member of the board of directors of one of the con-

tracting parties does not of itself annul the provisions of the contract requiring his approval.

5. BUILDING CONTRACTS—*Certificate of Engineer, When Final.*— Where the stipulation in a building contract provides that the engineer's estimate and classification shall be final, the fact that he was a stockholder in the contracting party, does not, of itself, render him incompetent to act.

6. SAME—*Excuse for Not Obtaining an Architect's Certificate.*—The question of whether the conduct of the architect was such as to excuse a party from obtaining a certificate, is one dependent upon all the facts and for the determination of the jury; and the former membership of the architect in the board of directors of one of the contracting parties is not conclusive as to this question.

7. PRACTICE—*Tendering an Unreasonable Number of Instructions.*— Where a party litigant tendered to the court eighty-four instructions, it was held to be an unfair and improper burden cast upon the trial court, and it would have been fully justified in refusing them all without examination, and preparing and giving, of its own motion, in lieu thereof, an instruction covering the theory of defense.

8. SAME—*Demurrer, When Waived.*—A demurrer to the declaration is waived by filing a plea of the general issue.

**Assumpsit.**—Balance due on contract for furnishing electric lighting machinery, etc. Trial in the Superior Court of Cook County; the Hon. WILLIAM C. EWING, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Reversed and remanded. Opinion filed June 29, 1898.

## STATEMENT.

This suit was brought by appellee for the use, etc., against appellant to recover a balance claimed on contract for furnishing an electric lighting plant and electric signaling devices for the building of appellant, and also for certain extras claimed, and also for value of certain labor and material claimed to have been made necessary by appellant, aside from the contract work and extras.

Written contracts were made and specifications agreed upon for the construction of the plant. The contract provided for payment upon certificates of the architect, and upon sufficient evidence that all claims for work and materials were discharged. The specifications provided that the plant should be accepted by the city electrician before final test by the architect. The final test by architect is provided for as follows:

" Upon completion of this plant, a careful and impartial test shall be made to extend through a period of thirty days. This test shall be made by actually running all the dynamos, by furnishing current to all the lamps in the building under every possible condition. At the end of this time, if the plant shall have proved satisfactory, and to have conformed to these specifications in every respect, the plant shall be accepted, this contractor replacing all lamps that have been broken during the test. If not found equal to the requirements, the contractor shall make the necessary corrections and improvements until the same shall have been made acceptable to the architect."

Upon the trial it was contended by appellant that appellee had failed to comply with the terms of the contract; that the dynamos furnished were insufficient and defective; that no test was made by the city electrician; that no final test was made by the architect, as provided; that no certificate was obtained from architect that the payments sued for were due; that appellant was obliged to remove the dynamos furnished and supply others; that the cost to appellant of making good the failure of appellee to comply with the contract was more than $10,000. Appellant contended that the balance, which would have been due to the appellee, if the contract had been fulfilled, was $6,322.60, and that by reason of such necessary outlay upon its part, there was a balance due it from appellee of $4,309.36, for which it made claim by way of set-off. On the other hand, appellee contended that the balance due upon contract price, together with extras and other necessary labor and materials, amounted to $8,310.93, upon which they claimed interest. Appellee claimed to have fully performed the terms of the contract; to have secured the approval of a city inspector; to have submitted to a test sufficient to comply with provisions of contract, and to have in all respects fully performed, except as to procuring the architect's certificate. This it undertook to excuse by showing that the architect was a stockholder and director of appellant when named in the contract, and that this fact was unknown to appellee when the contract was made.

The trial resulted in a verdict for appellee for $4,096.10. From judgment upon this verdict the appeal here is prosecuted.

Prussing & McCulloch, attorneys for appellant.

Frederick W. Job, attorney for appellee; Church & McMurdy, of counsel.

Mr. Justice Sears delivered the opinion of the court.

Upon the trial of this cause a large amount of conflicting evidence was heard on the issues of fact presented. Inasmuch as the determination of questions of law make it necessary that another trial should be had, we refrain from comment, except where unavoidable, upon the facts. Certain instructions tendered by appellee and given by the court are assigned as error. The first of these instructions is in effect that in the event of certain actions by the architect, then the refusal of the architect to approve and accept plant would not preclude recovery, and in such case if the work done and materials furnished were " in good faith and substantially in accordance with requirements of the contract and specifications," the appellee might recover in absence of approval of architect.

It is contended, and we think correctly, that this instruction was faulty, in that it omitted as an element essential to recovery, the proving of acceptance by city electrician and submission to the thirty day test provided for in the contract. There was a conflict in the evidence as to the performance of these stipulated requirements.

An instruction which purports to tell the jury under what conditions a recovery may be had, must give all the conditions essential to right of recovery. C., B. & Q. R. R. Co. v. Griffin, 68 Ill. 499; The St. L. & S. Ry. Co. v. Britz, 72 Id. 256; Evans v. George, 80 Id. 51; City v. Schmidt, 107 Id. 186; Craig v. Miller, 133 Id. 300; Pardridge v. Cutler, 168 Id. 504.

The instruction is also incorrect in permitting the jury to

regard a "substantial" compliance with the provisions of the contract and specifications as equivalent to a complete performance, and to award a recovery thereon, without limitation as to amount.   Taylor v. Beck, 13 Ill. 376; Estep v. Fenton, 66 Id. 467; Keeler v. Herr, 157 Id. 57.

In the latter case the court said : "We think the instructions are erroneous, both because they allow plaintiffs to recover the full contract price upon proof of a 'substantial performance' of their contract, and," etc.

The second instruction is as follows:

"The court instructs the jury that it is an admitted fact in this case that at the time the plaintiff entered into the original contract with the defendant of May 25, 1892, and also on the date of the supplemental contract indorsed upon the first contract, whereby the sum of $8,367 was added to the price named in the original contract, Henry Ives Cobb, the architect named in that contract, was a member of the board of governors of the Chicago Athletic Association.   If, therefore, the jury believe from the evidence that at the time these contracts were made, neither the plaintiff nor Kohler Bros., its agents, by whom said contracts were made, was aware that said Henry Ives Cobb was a member of the board of governors of the Chicago Athletic Association, then the plaintiff was not bound in this case to procure any certificate from said architect as a condition precedent to its right of recovery in this suit, nor is the plaintiff bound by any of the provisions of the contract which required the plaintiff to complete the work therein contracted for to the satisfaction of the architect, or to submit to the decision of said architect any question arising during the progress of the work or in the settlement of the accounts touching the same, or any test of the operation of the plant."

It appears from the evidence that Cobb, the architect named in the contract, was a member of the board of directors or governors of appellant at the time of the making of the contract, but that he had resigned his membership in the board April, 1894.   The appellee, on July 25, 1894, wrote to the architect as follows:

"Chicago, July 25, 1894.

Henry Ives Cobb, Esq.,

Pursuant to the terms of a contract between the Chicago Athletic Association and the Eddy Electric Manufacturing Company, dated the 25th day of May, 1892, and the addition thereto made and entered into by said parties, after the fire of November 1, 1892, at the club house of said Chicago Athletic Association, we now notify you that the work under said contract has been fully completed by us; that the terms and conditions of said contract have been complied with by us, and we hereby demand of you your certificate as the architect of said building, certifying that said contract has been completed and the work thereunder, including the necessary extras, has been fully performed by us.

We hand you herewith a statement showing the balance due on the original contract, the amount due for extras ordered and O K'd by you, Mr. Macomber, and the extras under the heading ' Extra expense Chicago Athletic Association,' the total sum of which is eighty-six hundred and 8–100 ($8,600.08) dollars.

Yours truly,

Eddy Electric Manufacturing Company,

(Signed)                    By Kohler Bros."

At the time, therefore, when the architect was called upon to act as to acceptance of the plant, he was no longer a member of the board.

The question presented in passing upon this instruction is whether the fact that the architect named in the contract had been a director of the appellant corporation at the time of making contract, such fact having been unknown to appellee when contract was made, would of itself invalidate the provisions of the contract as to procuring certificate of such architect as condition precedent to payment of contract price, even though no fraudulent action of the architect appear, and he had ceased to be a member of the board when his certificate was required.

It is settled by a long line of decisions of this State that

in the absence of fraud or refusal to act on the part of the architect, or of waiver by parties, the certificate of the architect is to be held as a condition precedent to recovery of contract price when the terms of the contract so stipulate. In other words, such provisions of building contracts are enforced by the courts. The instruction here would make the fact of the prior membership in the board of directors of appellant a disqualification of the architect and *per se* an excuse to the contractor for failure to procure certificate, irrespective of whether there was any fraud on the part of the architect or a refusal to act. We are of opinion that the fact of the former membership of Mr. Cobb in appellant's board of directors did not, of itself, operate to annul all those provisions of the contract requiring the approval of the architect. Kidwell v. B. & O. R. R. Co., 11 Gratt. 676; Williams v. C., S. F. & C. Ry. Co., 112 Mo. 463; Ranger v. G. W. Ry. Co., 5 H. of L. Cases, 71; N. Co. v. Fenlon, 4 Watts & S. 205.

In Kidwell v. B. & O. R. R. Co., *supra*, the court said:

"The final estimates, as before stated, were made by the resident engineers and concurred in by Atkinson, the division engineer. I do not think their validity is affected by the fact that when they were made Latrobe had been a stockholder, and Atkinson was a stockholder in the character of trustee for another, without having, himself, any interest in the subject. Whether, if they had been made by an engineer who, at the time of making them, was a stockholder in his own right, they would have been invalid merely on that ground and in the absence of fraud, is a question which does not arise, and is, therefore, not intended to be decided."

In Williams v. C. S. F. & C. Ry. Co., *supra*, the court said:

"It should be further noted that plaintiffs complained that Mr. Robinson, the chief engineer, was an officer and stockholder of defendant. * * * The stipulation in the contract that the engineer's estimate and classification should be final, is valid and binding, and has the sanction

of the courts in England and the different States of the Union and the Federal courts.   *   *   *   And it is equally well settled that the fact that the chief engineer was also a stockholder does not, of itself, render the submission to him invalid. The argument made by the plaintiffs that the duties confided to the engineer are essentially judicial, and, being a stockholder himself, he is thus made a judge in his own case, was met in the case of Ranger v. Railway Co., 5 H. L. Cas. 88."

In Ranger v. G. W. Ry. Co., *supra*, the court said : "The next ground on which he rests his title to relief is, that Mr. Brunel, the principal engineer of the company, on whose decision many matters were, by the terms of the contract, made to depend, was incapacitated from acting in the discharge of the duties imposed on him, by reason of his being himself a shareholder in the company.   *   *   *   He was, in truth, made the absolute judge, during the progress of the works, of the mode in which the appellant was discharging his duties; he was to decide how much of the contract price of 63,028 pounds, from time to time, had become payable, and how much was due for extra works; and from his decision, so far, there was no appeal.   *   *   *   The contention now made by the appellant is, that the duties thus confided to the principal engineer were of a judicial nature; that Mr. Brunel was the principal engineer by whom these duties were to be performed, and that he was himself a shareholder in the company; that he was thus made a judge or arbitrator in what was, in effect, his own cause. That until the month of July, 1838, the appellant was unaware of the fact of Mr. Brunel having any interest in the company, except as the engineer, and so ought not to be bound by any of his decisions.   *   *   *   But here the whole tenor of the contract shows it was never intended that the engineer should be indifferent. When it is stipulated that certain questions shall be decided by the engineer appointed by the company, this is, in fact, a stipulation that they shall be decided by the company.   *   *   *   The company's engineer was not intended to be an impartial judge,

but the organ of one of the contracting parties. * * *
I think it is quite enough if they (the engineer's estimates)
were made *bona fide*, and with the intention of acting accord-
ing to the exigency of the terms of the contract."

The question of whether the conduct of the architect was
such as to excuse appellee from the requirement to obtain
a certificate, was one dependent upon all the facts and for
the determination of the jury; and the former membership
of the architect in appellant's board of directors was not, as
matter of law, conclusive as to this question.

The third instruction is bad, in that it assumes a contro-
verted fact, viz., that the plant had been placed in appel-
lant's building prior to August, 1893. It is no answer to
this objection to say that it was uncontroverted that some
part of the plant specified had at that time been constructed.
That the plant, as an entirety and in compliance with the
terms of the contract and specifications, had then been con-
structed, was very sharply controverted. This instruction
is also subject to criticism as amounting to a direction to
the jury to regard certain facts as conclusive of the question
of appellee's excuse from procuring the certificate.

The fourth instruction is subject to the same objection as
the first, in permitting the jury to regard substantial fulfill-
ment of the requirements of the contract as sufficient to
warrant a recovery without limitation as to amount. The
instruction does not in terms direct that the jury might in
such case award the full contract price, but they would be
very likely to be misled into such view by the language of
the instruction.

The fifth, sixth, seventh and eighth instructions are sub-
ject to this same objection.

It is also contended by counsel for appellant that the trial
court erred in refusing certain instructions tendered by
appellant. We shall not undertake to pass upon this con-
tention. There were eighty-four instructions tendered by
appellant. This was an unfair and improper burden cast
upon the trial court. That court would have been fully
justified in refusing them all without examination upon the

ground of the unreasonable number, and upon preparing and giving, of its own motion, in lieu thereof, an instruction covering the theory of defense.

Counsel discuss in their briefs the demurrer to the thirteenth count of the declaration. It appears, however, from the abstract, that the demurrer was waived by plea of general issue filed January 30, 1896.

For errors in the giving of instructions tendered by appellee, as above noted, the judgment is reversed and cause remanded.